## Richmond

# Virginia Farm Bureau Mutual Insurance Company

## v.

# Nationwide Mutual Insurance Company, et al.

March 12, 1982.

Record No. 810632.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson, and Stephenson, JJ., and Harrison, Retired Justice.

*S. J. Thompson, Jr. (Caskie, Frost, Hobbs & Hamblen,* on brief), for appellant.

*Howard W. Rhodes, Jr. (J. Michael Gamble; Pendleton and Gamble; Rhodes, Jennings & Livingston,* on briefs), for appellees.

PER CURIAM.

In this case, a company providing uninsured motorist coverage to a decedent in a wrongful death action was unsuccessful in its effort to have the trial court declare that another company owed the defendant liability coverage.

On October 5, 1979, Earl T. Drumheller was killed in a collision with a Ford automobile owned and operated by Edward J. Baker, Jr. Drumheller's vehicle was covered by a policy of automobile insurance issued by Virginia Farm Bureau Mutual Insurance Company (Farm Bureau) which provided uninsured motorist coverage.

Farm Bureau filed a motion for a declaratory judgment, asking the court to declare that Baker was insured for liability by Nationwide Mutual Insurance Company (Nationwide) and, hence, that Farm Bureau did not owe uninsured motorist coverage to the decedent. The issues presented were whether Baker's Ford automobile replaced a BMW automobile described in Baker's policy with Nationwide and whether the Ford had been acquired by Baker during the policy period. The trial court ruled against Farm Bureau on both issues.

Baker and his wife formerly lived in Pennsylvania. They owned two vehicles, a 1969 Alfa Romeo titled in Baker's name and a 1967 BMW titled in his wife's name. Both vehicles were insured by a Nationwide policy written in Baker's name. The policy provided comprehensive and collision coverage as well as liability coverage.

In January 1978, the Bakers moved to Amherst, Virginia. A short time later they separated, and Mrs. Baker returned to Pennsylvania. By agreement, she took the Alfa Romeo and left the BMW for her husband. The Pennsylvania agency for Nationwide advised its Virginia agent, Samuel P. Massey, to contact the insured. Massey wrote Baker on September 18, 1978, requesting him to furnish certain information the agent needed. Although Baker did not respond to this letter, he continued to pay his pre-

miums timely, and Nationwide periodically renewed the policy showing coverage of the BMW.

It is not denied that the policy was in full force and effect at the time of the fatal accident. The crucial question is whether the Ford automobile Baker was driving was an owned vehicle within the meaning of the policy. An "owned automobile" is therein described to be "a private passenger . . . automobile described in this policy for which a specific premium charge indicates that coverage is afforded," and "a private passenger . . . automobile ownership of which is acquired by the Named Insured during the policy period, provided . . . it replaces an owned automobile as defined . . . above."

The trial court found that the Ford Baker was driving at the time of the accident was not a replacement vehicle for Baker's BMW. We agree.

Baker testified that he drove the BMW until its Pennsylvania registration expired in April 1978. He described the car as a "special model" made in 1967, a "kind of an oddball", "a rare car", "like a European rally car." He said that he parked the car in his driveway because "the tags had run out" and that eventually it developed a short circuit in the ignition system. He said he started the car occasionally "to keep . . . the engine going, and all."

Baker further testified that in August 1978 he purchased a Chevrolet Nova for transportation to work. Asked if he transferred his policy from the BMW to the Chevrolet, he responded, "No, I didn't. . . . [A]t that point I was still figuring on using the BMW and driving it around when I could get it fixed. So I never transferred it." "I was figuring on getting the BMW running and back on the road", he explained, and the Nova "was just to use until I could get the BMW running again." In December 1978, the Nova became inoperable, and Baker hauled it to a junkyard and purchased the Ford Falcon involved in the collision with Drumheller.

There is no evidence to show that Baker ever intended to sell, trade, abandon, or replace his BMW. He regarded it as a very special vehicle, a rare object, and one he intended to use as soon as he could find a mechanic he "trusted to work on it."

Had the BMW been stolen, destroyed by fire, or damaged by a fallen tree on October 5, 1979, Nationwide would have had no defense to a claim asserted by Baker, because the BMW was the vehicle listed as the insured vehicle. Nationwide collected only one

premium from Baker, and it assumed only the risks related to that vehicle and replacement vehicles. The fact that Baker purchased two additional vehicles is immaterial; Baker retained the vehicle Nationwide insured, Nationwide continued to insure that vehicle, and, for purposes of insurance coverage, the Chevrolet and Ford automobiles never took the place of the BMW.

In light of our conclusion, we need not consider other issues raised on appeal, and we will affirm the judgment.

*Affirmed.*